FEDERAL LAND BANK OF ST. LOUIS *v.* PRIDDY, CIRCUIT JUDGE.

No. 594. Argued April 5, 1935.—Decided April 29, 1935.

*Mr. Peyton R. Evans,* with whom *Messrs. Scott W. Hovey, John Thorpe,* and *J. R. Crocker,* and *Miss May T. Bigelow* were on the brief, for petitioner.

No appearance for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

A real estate broker brought suit in the Circuit Court for Pope County, Arkansas, against petitioner, incorporated under Act of Congress (Federal Farm Loan Act, July 17, 1916, c. 245, 39 Stat. 360), and domiciled in Missouri, to recover a brokerage commission. Pursuant to local law (Crawford & Moses' Digest, §§ 1159–1163), he began the suit by attachment of real estate of the petitioner in the county, as that of a foreign corporation.

Petitioner appeared specially in the circuit court and moved to vacate the attachment, on the grounds that it is

not a foreign corporation subject to attachment under the pertinent statutes of Arkansas, and that it is a federal instrumentality, immune from mesne process of attachment, by virtue of its organization and functions under the statutes of the United States. On denial of the motion, petitioner sought of the Supreme Court of the State a writ of prohibition directed to respondent, the Circuit Judge, which was denied. 189 Ark. 438; 74 S. W. (2d) 222. We brought the case here on certiorari.

The ruling of the state Supreme Court, that petitioner is a foreign corporation within the meaning of the Arkansas attachment statute, and that the attachment was authorized by local law, presents only a state question, which is not open for review here. The sole question for our consideration is whether the petitioner is exempt from attachment because it is a federal agency or instrumentality which Congress has not expressly subjected to judicial process.

Without now entering into a detailed examination of the subject, it is sufficient that this Court has already had occasion to consider the organization and functions of federal land banks, and to declare that they are instrumentalities of the federal government, engaged in the performance of an important governmental function. *Smith* v. *Kansas City Title & Trust Co.*, 255 U. S. 180; *Federal Land Bank* v. *Gaines*, 290 U. S. 247. As such, so far as they partake of the sovereign character of the United States, Congress has full power to determine the extent to which they may be subjected to suit and judicial process. See *Eastern Transportation Co.* v. *United States*, 272 U. S. 675, 677. Whether federal agencies are subjected to suit and, if so, the extent to which they are amenable to judicial process, is thus a question of the congressional intent. See *The Lake Monroe*, 250 U. S. 246, 249; *Sloan Shipyards* v. *U. S. Shipping Board*, 258 U. S. 549; *Missouri Pacific R. Co.* v. *Ault*, 256 U. S. 554, 559. If the

answer is not made plain by the words of the statute, it is necessary to ascertain, by examination of the purposes and organization of the federal farm loan system, whether immunity from attachment is granted by implication. See *Shaw* v. *Oil Corp.*, 276 U. S. 575.

Section 4 of the Federal Farm Loan Act provides that federal land banks "shall have power . . . to sue and be sued, complain, interplead, and defend, in any court of law and equity, as fully as natural persons." This express waiver of immunity from suit narrows the inquiry to the question whether liability to suit includes by implication judicial process of attachment and execution, which are usual incidents of suits against natural persons. For it is conceded that if the liability to suit includes liability to execution, it would equally include liability to process of attachment, by which the property seized is held subject to execution.

In interpreting § 4, it is to be borne in mind that federal land banks, although concededly federal instrumentalities, possess also some of the characteristics of private business corporations.[1] See *Federal Land Bank* v. *Gaines, supra,* 254. The statute does not contemplate that their stock is to be wholly, or even chiefly, government owned.[2] Its

---

[1] The legislative history of the Federal Farm Loan Act shows that Congress understood that many of the activities of the federal land banks were to be of a private character. See Report, Joint Cong. Comm., H. R. Doc. No. 494, 64th Cong., 1st Sess., p. 6; Report of Senate Comm. on Banking and Currency, No. 144, 64th Cong., 1st Sess., p. 2; Remarks of Senator Hollis, sponsor of the bill, 53 Cong. Rec. 6854. For this reason the Senate gave extended consideration to the constitutionality of exempting federal land banks from state taxation. 53 Cong. Rec. 6961–6970, 7305–7318, 7372–7378.

[2] The original capitalization of the twelve federal land banks was $9,000,000, of which the Treasury subscribed $8,892,130. (Federal Farm Loan Board, Annual Report, 1917, p. 13.) As the national farm loan associations, made up of individual borrowers, were organized and borrowed from the banks, they were required to purchase

acquisition by private investors is permitted, § 5, and its subscription by the borrowing national farm loan associations is compulsory, § 7. The operations of the federal land banks are, in part at least, for profit. § 5. In the conduct of their business they may enter into contracts, § 4, borrow money, receive interest and fees, § 13, pay the expenses and commissions of agents, § 15, and pay dividends on their stock, § 5. While they are required to deposit in trust farm mortgages as security for farm loan bonds, § 13, they may acquire and dispose of property in their own right, including land. § 13. They thus have many of the characteristics of private business corporations, distinguishing them from the Government itself and its municipal subdivisions, and from corporations wholly government owned and created to effect an exclusively governmental purpose. This is a circumstance which gives some support to the inference that the intended scope of the liability to suit includes judicial process incident to suit. See *District of Columbia* v. *Woodbury*, 136 U. S. 450, 456; *Clallam County* v. *United States*, 263 U. S. 341, 345.

The implication finds support also in the fact that the remedies afforded by the Federal Farm Loan Act to creditors of federal land banks are identical with those given to creditors of joint stock land banks. Joint stock land

stock in the banks. § 7. By this method the original Treasury subscription was almost wholly retired, and only $204,698 of the issued capital stock, $65,676,130, was Government owned in 1931. (Federal Farm Loan Board, Annual Report, 1931, p. 21.) Recent legislation has resulted in a large increase in the capital stock and surplus of the federal land banks, contributed by the Government. See Act of January 23, 1932, c. 9, 47 Stat. 12, 12 U. S. C. 698; Act of June 16, 1933, c. 100, 48 Stat. 274, 279; cf. Act of January 31, 1934, c. 7, 48 Stat. 344, 12 U. S. C. 1020 *et seq.* But the liability to judicial process cannot be thought to fluctuate with the varying amount of the government investment. See *Sloan Shipyards* v. *U. S. Shipping Board*, 258 U. S. 549, 566.

banks are privately owned corporations, organized for profit to their stockholders through the business of making loans on farm mortgages. § 16. There is nothing in their organization and powers to suggest that they are government instrumentalities. Section 16 declares that "except as otherwise provided, joint stock land banks shall have the powers of, and be subject to all the restrictions and conditions imposed on, Federal land banks by this Act, so far as such restrictions and conditions are applicable . . ." There is no other provision relating to their general corporate powers and liabilities. Section 29 provides that "upon default of any obligation, Federal land banks and joint stock land banks may be declared insolvent and placed in the hands of a receiver by the Farm Credit Administration [Federal Farm Loan Board] . . ." Except for § 4, subjecting federal land banks to suit, made applicable to joint stock land banks by § 16, there is no other remedy provided for creditors of either class of banks whose judgments are unpaid, and the receivership is available only through the favorable action of the Farm Credit Administration. In view of the character of the business of joint stock land banks, there is no ground for supposing that Congress intended to render their property immune from seizure by judicial process and thus to make a receivership, if permitted by the Farm Credit Administration, the sole means of compelling payment of judgments against them, or that it would have extended to them the provisions and restrictions of § 16 if it had been thought to exempt them from attachment and execution. The inference is strong that by treating the two types of corporations alike with respect to liability to suit and attachment, the one, as much as the other, was intended to be subject to judicial seizure of its property, such as is ordinarily incident to suits, to which both are expressly made subject.

It is of some significance, also, that Congress thought it necessary, by the terms of § 26, to exempt federal land

banks from taxation, a provision which is not made applicable to joint stock land banks. There is thus a specific grant of immunity from taxation, to a corporation having its own purposes as well as those of the United States, and interested in profits on its own account, see *Clallam County* v. *United States, supra,* 344, 345; compare *The Lake Monroe, supra,* 256, in contrast to the legislative silence as to attachment and execution in suits to which the bank is liable. This affords additional evidence of the congressional judgment that attachment and execution, as distinguished from liability to taxation, are not obstacles to the performance of the governmental functions committed to federal land banks. Had it been intended otherwise it would seem to have been at least equally necessary to provide specifically for immunity from attachment and levy, as was done in § 10 of the Federal Railroad Control Act, c. 25, 40 Stat. 451, 456, which subjected rail carriers under federal control to liability to suit. Immunity of corporate government agencies from suit and judicial process, and their incidents, is less readily implied than immunity from taxation. See *The Lake Monroe, supra; Sloan Shipyards* v. *U. S. Shipping Board,* 258 U. S. 549, 566–568; *Olson* v. *U. S. Spruce Corp.,* 267 U. S. 462; *U. S. Shipping Board* v. *Harwood,* 281 U. S. 519, 524–526; compare *The Davis,* 10 Wall. 15; *National Volunteer Home* v. *Parrish,* 229 U. S. 494; *Standard Oil Co.* v. *United States,* 267 U. S. 76, 79.

In prescribing liability to suit, the qualifying phrase " as fully as natural persons " is not customary in acts defining the powers and duties of private corporations, or usual in those creating corporations to perform federal functions.[3] It appears in § 8 of the National Banking

---

[3] See, e. g., the acts creating the Federal Reserve Banks, c. 6, § 4, 38 Stat. 251, 254, 12 U. S. C. 341; the War Finance Corporation, c. 45, § 6, 40 Stat. 506, 507, 15 U. S. C. 336; the Inland Waterways Corporation, c. 243, § 5, 43 Stat. 360, 362, 49 U. S. C. 155; the Fed-

Act, enacted in 1864, c. 106, 13 Stat. 99, 101, which authorized national banks " to sue and be sued, complain and defend, in any court of law and equity as fully as natural persons." In 1873 the National Banking Act was amended, c. 269, § 2, 17 Stat. 603, to provide that " no attachment, injunction, or execution shall be issued against such association, or its property, before final judgment in any such suit, action, or proceeding in any State, county or municipal court." (R. S. § 5242, 12 U. S. C. 91.) This amendment, which impliedly saved the right of execution upon judgments against national banks, while forbidding attachment, would seem to be a recognition by Congress that the liability of national banks to suit " as fully as natural persons " extends by implication to attachment and execution. See *Pacific National Bank* v. *Mixter,* 124 U. S. 721; *Van Reed* v. *People's National Bank,* 198 U. S. 554; compare *Earle* v. *Pennsylvania,* 178 U. S. 449, 454. The legislative history of this section of the National Banking Act suggests that the like provision, without the amendment, was incorporated in the Federal Farm Loan Act as sufficient to subject federal land banks to the same liability to attachment to which national banks were deemed to be subject before the amendment of the National Banking Act.

While none of these considerations, taken alone, may be enough to give clear indication of the congressional purpose, their cumulative effect is persuasive that federal land banks, like joint stock land banks, were intended to be subject to the incidents of suit, including attachment

eral Intermediate Credit Banks, c. 252, § 201 (c), 42 Stat. 1451, 1454, 12 U. S. C. 1023; The China Trade Act Corporations, c. 346, § 6, 42 Stat. 849, 851, 15 U. S. C. 146; the National Volunteers' Home, R. S. § 4825; the Tennessee Valley Authority, c. 32, § 4, 48 Stat. 58, 60, 16 U. S. C. 831 c; the Reconstruction Finance Corporation, c. 8, § 4, 47 Stat. 5, 6, 15 U. S. C. 604, and the Home Owners Loan Corporation, c. 64, § 4 (a), 48 Stat. 128, 129, 12 U. S. C. 1463 (a).

and execution. In creating federal land banks as government instrumentalities, but with many of the purposes and activities of private corporations, in exempting them alone from taxation, and at the same time subjecting them, like joint stock land banks, to suit "as fully as natural persons," Congress cannot be thought to have intended that either class of banks should be immune from attachment, and their judgment creditors relegated to a receivership, allowed as a matter of grace, as the sole means of collecting their judgments.

In the present case it does not appear that the attachment would directly interfere with any function performed by petitioner as a federal instrumentality. We reserve the question whether a different result would be required if such an interference were shown.

*Affirmed.*