## Stamp Tax on Mortgage Bonds

Department of Justice. Opinion to Hon. H. Edgar Barnes.

MARGIOTTI, Attorney General, July 19, 1935. — We have your inquiry of recent date requesting the opinion of this department as to the application of the provisions of The Documentary Stamp Tax Act of May 16, 1935, P. L. 203, as amended by the Act of June 22, 1935, P. L. 439, to bonds and notes secured by mortgages, and deeds given to the following named corporations and persons:

Federal land banks,
The Federal Farm Mortgage Corporation,
Federal intermediate credit banks,
The Central Bank for Coöperatives,
Banks for coöperatives,
Production credit corporations,
Production associations,
Regional agricultural credit corporations,
The Governor of the Farm Credit Administration.

Section 3 of The Documentary Stamp Tax Act provides as follows:

"Every person who makes, executes, issues, or delivers any document, or in whose behalf any document is made, executed, issued, or delivered, except corporations, associations, trusts, community chests funds or foundations, organized exclusively for charitable, religious, or educational purposes, no part of the income of which inures to the benefit of any private shareholder, member, or individual, shall be subject to pay for, and in respect to such document, or for or in respect of the vellum parch-

ment or paper upon which such document is written or printed, a State tax at the rate of five cents (5c) for each one hundred dollars ($100.00), or fraction thereof, of the value represented by such document, payable at the time of making execution, issuance, or delivery of such document."

Section 8 of the act provides that no taxable document can be recorded unless proper documentary stamps are affixed, and a penalty is imposed upon any prothonotary or recorder of deeds if he accepts an unstamped but taxable document for recording.

The acts of Congress, under which the Federal land banks, The Federal Farm Mortgage Corporation and The Federal intermediate credit banks were created contain specific provisions exempting all the property of these corporations from State taxation and also declaring mortgages issued to them to be instrumentalities of the Federal Government exempt from State taxation.

The effect of these provisions was discussed in a formal opinion of this department dated December 11, 1930, addressed to Honorable Charles Johnson, the then Secretary of Revenue. In that opinion we stated that mortgages given to a Federal land bank were not subject to the State tax imposed upon mortgages and deeds presented for recording in the offices of recorders of deeds throughout the Commonwealth. We relied on the case of Federal Land Bank of New Orleans v. Crosland, 261 U. S. 374.

There is no substantial difference between the tax under discussion in our former opinion and the tax imposed under the provisions of The Documentary Stamp Tax Act. In both cases the tax is upon the document and in both cases the document cannot be recorded unless either the tax is paid or the stamp is affixed. In practical effect the cases are analogous.

Our opinion of December 11, 1930, was referred to in Formal Opinion No. 176 of 1935, addressed to you: Tax on Home Owners' Loan Bonds, 24 D. & C. 31. In the

latter opinion we discussed the effect of the tax exemption provisions of the act creating the Home Owners' Loan Corporation which we there said were substantially similar to the tax exemption provisions relating to the Federal land banks. In the latter opinion we held that mortgages given to the Home Owners' Loan Corporation were exempt from the documentary stamp tax by virtue of the tax exemption provisions in question.

The acts creating the other corporations above named, and authorizing the Governor of the Farm Credit Administration to make loans, do not, however, contain specific tax exemption provisions such as those applicable in the cases of the corporations just discussed. That mortgages and deeds executed to all of the above named corporations and to the Governor of the Farm Credit Administration are not taxable documents under the provisions of The Documentary Stamp Tax Act is evident from the consideration of a broader ground than that just discussed as specifically applicable only to the Federal land banks, the Federal Farm Mortgage Corporation and the Federal intermediate credit banks. All of the agencies under discussion here are instrumentalities of the Federal Government performing a governmental function in carrying out the expressed policies of Congress. In Tax on Home Owners' Loan Bonds, supra, we made a detailed examination of the authorities bearing upon this question with regard to the Home Owners' Loan Corporation. None of the agencies under discussion are in principle distinguishable from that corporation and the reasoning of our former opinion is applicable here.

We believe that an examination of the somewhat dissimilar functions of the several agencies here under consideration will be helpful.

The Federal land banks were established under the Federal Farm Loan Act of July 17, 1916, 39 Stat. at L. 360, for the purpose of making long-term loans to farmers upon the security of first mortgages on farm real

estate. The banks are qualified to be depositories of public money and may be employed as fiscal agents of the Federal Government. They have been judicially determined to be instrumentalities of the United States in Smith v. Kansas City Title & Trust Co. et al., 255 U. S. 180, Federal Land Bank of Columbia v. Gaines, 290 U. S. 247, and Federal Land Bank of St. Louis v. Priddy, 295 U. S. 229, decided April 29, 1935.

The Federal Farm Mortgage Corporation was created under the Federal Farm Mortgage Corporation Act, of January 31, 1934, 48 Stat. at L. 344, for the purpose of making loans to Federal land banks on the securities of consolidated farm loan bonds. In the course of its operations this corporation must necessarily acquire, as collateral or otherwise, mortgages originally given by farmers to secure loans made to them. Although this corporation has not been judicially held to be an agency of the Federal Government, it is not distinguishable in this respect from the Federal land banks; and the act under which it was created expressly declares all credit paper held and issued by it to be instrumentalities of the Government of the United States.

The Federal intermediate credit banks were organized under the Agricultural Credits Act of March 4, 1923, 42 Stat. at L. 1454, as supplemented by the Farm Credit Act of June 16, 1933, 48 Stat. at L. 257, for the purpose of discounting obligations of farmers which originally had been accepted by banks, agricultural credit corporations, and other lending institutions, and also for the purpose of lending money to farmers' coöperative credit institutions on the security of agricultural short term paper. These banks enjoy the same tax exemption as Federal land banks and they may be designated as fiscal agents of the Government. Since they possess all the characteristics which caused the Supreme Court of the United States to denominate Federal land banks instrumentalities of the Government, they also must be considered as instrumentalities of the United States.

The stock of all the foregoing agencies is owned entirely by the United States Government.

The Central Bank for Coöperatives, the banks for cooperatives, the production credit corporations and the production credit associations were all created under the provisions of the Farm Credit Act of 1933, supra.

This statute provides that all of these agencies may be designated as fiscal agencies of the United States. The Central Bank for Coöperatives and the banks for cooperatives were created to provide credit to farmers' cooperative associations. The production credit corporations and the production credit associations were established to meet the short term credit needs of agriculture and to make more readily available to it the facilities of the Federal intermediate credit banks with which these agencies may discount their loans. Obviously, all of these corporations may from time to time acquire mortgages or deeds as collateral or in satisfaction of loans made by them to farmers. Although borrowers from these corporations may, and actually have, acquired stock in them, the great majority of the stock is owned by the Government of the United States. They are expressly exempted from State taxation until the stock held by the United States has been retired. There can be no doubt that these corporations are engaged in performing a governmental function and are, at present, as much instrumentalities of the United States as are the Federal land banks concerning which judicial opinions to this effect have been rendered. It is, however, probable that if and when the stock held by the United States in them is retired, they will acquire another status. Since the happening of this contingency is remote it need not concern us here.

The regional agricultural credit corporations were incorporated under the provisions of an amendment to the Emergency Relief and Construction Act of July 21, 1932, 47 Stat. at L. 709. These corporations are now in the process of liquidation under the direct supervision of the

Governor of the Farm Credit Administration. They were created for the purpose of extending credit to farmers and stockmen in areas where credit was not available from commercial sources. In the course of their liquidation it will be necessary, of course, for them to accept, from time to time, renewal mortgages and possibly deeds. The reasons for holding the corporations, heretofore considered, to be instrumentalities of the Federal Government are equally applicable in the case of regional agricultural credit corporations; and, in addition, this conclusion is compelled by the fact that these corporations are in actual liquidation under the direct control of officers of the Federal Government.

No extended discussion need be entered into with regard to the Governor of the Farm Credit Administration. Under the Act of February 20, 1935, he is given authority to make emergency seed loans from a direct appropriation from the Treasury of the United States. There can be no question but that in so doing he is performing a governmental function.

All of the agencies herein considered were created by acts of Congress to carry out a declared policy of the Federal Government in the exercise of its constitutional powers, namely, the extending of substantial financial relief to agriculture in the form of loans from the Federal Government. In this respect the activities of these agencies are not distinguishable in principle from those of the bank under consideration in Federal Land Bank of New Orleans v. Crosland, supra. Their activities are furthermore similar to those of the Home Owners' Loan Corporation discussed in Tax on Home Owners' Loan Bonds, supra, which extends financial relief in the form of Federal loans to home owners. We have held that the Home Owners' Loan Corporation and the RFC Mortgage Corporation, which engages in similar activities, are performing governmental functions.

The taking of mortgages and deeds are indispensable adjuncts to the operations of the agencies herein consid-

ered. If such mortgages and deeds are taxed under the provisions of The Documentary Stamp Tax Act, the operation of these agencies would, manifestly, be restricted and such taxation would hamper their ability to accomplish the purpose for which they were created. It is immaterial that the tax in its present form does not constitute a serious restriction. If mortgages and deeds given to these agencies can be taxed at all by a State, even though the tax is payable by those persons executing such mortgages and deeds, the rate of tax could be established at a point so high that it would be prohibitive and would entirely disenable these agencies to accomplish the purpose of the Congress. Regardless of the amount of the tax it adds directly to the cost of the loan and, whatever its amount, the increased costs of credit resulting from its imposition might deter some persons from availing themselves of the benefits intended to be conferred upon them by Congress.

In the case of McCulloch v. The State of Maryland et al., 4 Wheat. 316, the principle was established that the several States have no power to tax the instrumentalities of the United States. In that case Chief Justice Marshall declared that no State has the power by taxation to "retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government." Subsequent decisions have held that where this principle applies it is not affected by the extent of the interference resulting from the State taxation: Indian Motocycle Co. v. United States, 283 U. S. 570; Johnson v. Maryland, 254 U. S. 51; Gillespie v. Oklahoma, 257 U. S. 501. In the latter case it was held that a State tax upon the net income derived by a lessee from leases of Indian land was void. The court stated that "a tax upon such profits is a direct hamper upon the effort of the United States to make the best terms that it can for its wards." Similarly in Indian Territory Illuminating Oil Co. v. Oklahoma, 240 U. S. 522, it was

held that a tax upon leases of Indian oil lands was a tax upon the power of the Government to make them and could be used to destroy the exercise of that power.

In Jaybird Mining Co. v. Weir, 271 U. S. 609, it was held that a State could not impose an ad valorem tax on ores mined under a lease of Indian lands given by the Secretary of the Interior.

In the recent case of Panhandle Oil Co. v. Mississippi, ex rel., 277 U. S. 218, the court went so far as to deny the right of a State to impose a tax upon a privilege, exercised by one of its citizens, of selling gasoline to the Federal Government.

In Federal Land Bank of New Orleans v. Crosland, supra, it was held to be immaterial whether the State tax was primarily payable by the United States or its instrumentalities, or the other party to the transaction, where the tax applied to mortgages given to the Federal land bank, an instrumentality of the United States. In that case, as here, the tax was required to be paid before the mortgage in question could be recorded and hence made effective to bind third parties. We discussed this decision in detail in our opinion of December 11, 1930, and in Tax on Home Owners' Loan Bonds, supra.

Accordingly, we are of the opinion, and so advise you, that if bonds and notes secured by mortgages, and deeds, given to the agencies here under consideration were taxable under The Documentary Stamp Tax Act, such taxation would greatly retard, impede and burden the operation of the laws enacted by Congress and for that reason would be an unconstitutional exercise of the State's taxing power. You are, therefore, advised that the Commonwealth cannot require documentary tax stamps to be affixed to the bonds and notes secured by mortgages, or deeds, given to the following named agencies:

Federal land banks,
The Federal Farm Mortgage Corporation,
Federal intermediate credit banks,
The Central Bank for Coöperatives,

Banks for coöperatives,
Production credit corporations,
Production associations,
Regional agricultural credit corporations,
The Governor of the Farm Credit Administration.

From Frederic Ray, Harrisburg.