## PRATO v. HOME OWNERS' LOAN CORPORATION.
### No. 6693.

District Court, D. Massachusetts.
Sept. 21, 1938.

Albert U. Rosa, of East Boston, Mass., and Albert L. Hyland, of Boston, Mass., for plaintiff.

Howard W. Cole and Brickley, Sears & Cole, all of Boston, Mass., for defendant.

FORD, District Judge.

The present action, removed to this Court from the Massachusetts State Court where the suit was begun, is one of tort to recover damages for personal injuries alleged to have been sustained in a fall upon an accumulation of ice and snow on the sidewalk in the front of premises upon which the defendant corporation foreclosed a mortgage and which it was in possession and control of at the time of the accident.

The defendant corporation filed a motion to dismiss alleging that the defendant was an instrumentality of the United States, wholly owned by the United States and as such could not be sued without the latter's consent, and that no consent had been given by the United States or Congress to an action in the nature of a tort such as the one described above.

The Home Owners' Loan Act (12 U.S.C.A. § 1461 et seq.) was created for the purpose of supplying direct relief to home owners. All of the stock was subscribed for by the Secretary of the Treasury on behalf of the United States. The corporation was authorized to issue bonds and these were guaranteed both as to interest and principal by the United States. The corporation was authorized to exchange bonds in limited amounts for mortgages on homes and to pay, within limits, any accrued taxes, assessments, necessary maintenance and repairs, and incidental costs in cash. Its lending period was authorized for a period of three years from June 13, 1933.

The act provided that it "shall be an instrumentality of the United States, which

shall have authority to sue and to be sued in any court of competent jurisdiction, Federal or State." 12 U.S.C.A. § 1463.

Its franchise, capital, reserves and surplus, loans and income, were exempt from all taxation by any state, county, municipality, or local taxing authority. Its real estate was subject to taxation to the same extent as other real property.

It was said in the case of United States v. Kay, 2 Cir., 89 F.2d 19, at page 22:

"The national public purpose embodied in the Home Owners' Loan Act of 1933 is evident * * *, the act was intended to afford direct relief to home owners and in this way to supplement the home loan bank system which would continue as a reserve system for home-financing private institutions. * * * The purpose of the act was * * * to relieve the distress of foreclosure."

▮ When this corporation was created a national emergency had arisen. Private banks and financial institutions were unable to carry the load and it was necessary, to save the homes of countless numbers of the American public, to pass some legislation of this character. There is no question of doubt that its passage was of vital importance to the national public welfare. It was not organized for profit, but had for its primary purpose the relieving of the needs of the home owners of the United States from the pressing and immediate danger of mortgage foreclosures. The demand for some such relief was national in scope. It had very little of the characteristics of private business corporations. It is difficult to distinguish this corporation, established by Congress as a convenient vehicle by which the Government could effect a purely governmental purpose, from the Government itself. It is plainly evident that the establishment of the Home Owners' Loan Corporation was within the scope of the Constitutional powers of Congress to tax, borrow, and make appropriations for the general or national welfare. United States v. Kay, supra.

In the case of Federal Land Bank v. Priddy, 295 U.S. 229, at page 231, 55 S. Ct. 705, 706, 79 L.Ed. 1408, it was decided that organizations such as Federal Land Banks, which were created for the relief of the farmer, and are similar in purpose to the Home Owners' Loan Corporation designed for the relief of the home owners, were instrumentalities of the Federal Government engaged in the performance of an important governmental function. See, also, Federal Land Bank v. Gaines, 290 U.S. 247, 54 S.Ct. 168, 78 L.Ed. 298. The Court in the Priddy Case, supra, further stated that the Federal Land Banks: "As such, so far as they partake of the sovereign character of the United States, Congress has full power to determine the extent to which they may be subjected to suit and judicial process." This case further said the whole question was one of Congressional intent. Eastern Transportation Co. v. United States, 272 U.S. 675, at page 677, 47 S.Ct. 289, 71 L.Ed. 472; The Lake Monroe, 250 U.S. 246, 249, 39 S.Ct. 460, 63 L.Ed. 962; Sloan Shipyards Corp. v. U. S. Shipping Board Emergency Fleet Corp., 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762. And it was further stated in the case of Federal Land Bank v. Priddy, supra, pages 231, 232, 55 S.Ct. page 706, that if the extent to which they were amenable to judicial process was not made plain by the words of the statute, that it was necessary to ascertain it by an examination of the purposes for which it was created.

▮ It is fundamental that the United States cannot be sued in its Courts without its consent and in granting such consent Congress has an unqualified discretion to specify the cases and contingencies in which the liability of the Government is submitted to the Courts for its judicial determination. Schillinger v. United States, 155 U.S. 163, 166, 15 S.Ct. 85, 86, 39 L. Ed. 108, in which the Court said: "Beyond the letter of such consent, the courts may not go, no matter how beneficial they may deem or in fact might be their possession of a larger jurisdiction over the liabilities of the government." As this case points out, up to the time that the Court of Claims was established, February 24, 1855, the only recourse of claimants was in an appeal to Congress.

▮ The United States is not liable for torts except by express legislative consent and we are confronted with the question as to whether or not Congress intended to include actions of tort within the scope of liability for suits imposed upon the Home Owners' Loan Corporation.

▮ Cases such as the Bank of United States v. Planters' Bank of Georgia, 9 Wheat. 904, 6 L.Ed. 244; Salas v. United States, 2 Cir., 234 F. 842; South Carolina v. United States, 199 U.S. 437, 26 S.Ct. 110, 50 L.Ed. 261, 4 Ann.Cas. 737, and

United States v. Strang, 254 U.S. 491, 41 S.Ct. 165, 65 L.Ed. 368, held that when a government enters private business it thereby abandons its sovereignty and is to be treated as any private corporation and that the mere fact that a private corporation is an instrumentality of the government does not defeat the doctrine of separate entities.

But this is not a case of the United States engaging in a commercial or private business. This corporation was established for the purpose of carrying out an important governmental function. This was the primary motive underlying its creation.

The present case is plainly analogous to the case of Lyle v. National Home for Disabled Volunteer Soldiers, C.C. 170 F. 842. This corporation was established by Congress with authority "to sue and be sued in courts of law and equity" [page 843]. The Court held this did not include the power to sue it in tort for the negligence of its officers. The power to sue was limited in this type of agency to the matters within the scope of the corporate powers with which it was invested. The Court in this case held that this corporation was purely an eleemosynary institution, without private gain, and its funds could not be diverted to satisfy tortious claims.

See, also, Overholser v. National Home, 68 Ohio St. 236, 67 N.E. 487, 62 L.R.A. 936, 96 Am.St.Rep. 658; Henson v. Eichorn & Home Owners' Loan Corp., D. C. E. D. Ill., March 24, 1938, 24 F.Supp. 842; Home Owners' Loan Corp. v. Hardie & Caudle, 171 Tenn. 43, 100 S.W.2d 238, 108 A.L.R. 702.

In the Lyle Case, supra, the corporation, the Court held, was performing a Constitutional function of the Federal Government and supported by funds supplied by the Federal Government and that it was part of the Government of the United States, and hence could not be sued in tort.

The Court in the case of Federal Land Bank v. Priddy, supra, in holding that Congress in bestowing upon Federal Land banks the power to sue and be sued intended to include in the scope of liability incident judicial processes, such as attachment, strongly intimated that if a judicial process "would directly interfere with any function performed by petitioner as a federal instrumentality" it might be led to take a different view. See, also, Federal Land Bank v. Gaines, supra.

If this is the rule to be applied, i. e., interference with the performance of a governmental function, in determining the extent of the suability of this type of corporation established by Congress, it would seem that a multitude of tort actions likely to be brought against the Home Owners' Loan Corporation if its suability is enlarged to this extent would without question directly interfere with the functions to be performed by it as a Federal instrumentality. The time and expense involved in defense of such suits would considerably embarrass the conduct of the enterprise. The judicial process involving attachment alone would lead to much trouble and inconvenience. The payment of large sums of money to defend suits and to satisfy judgments obtained against the defendant corporation would run into a very sizeable amount and divert the funds of the corporation for a purpose Congress never intended they should be used and help defeat the purposes for which the corporation was created. Surely Congress never contemplated this result nor intended it should take place.

[7] The Home Owners' Loan Corporation as an instrumentality of the Federal Government performs an important Constitutional function and I cannot find either in the words of the statute or in an examination of the purposes for which it was established that Congress intended to subject it to actions of tort; and, further, it is my opinion that such actions would seriously tend to interfere with the functions to be performed by it and would break down to a considerable extent the very plan Congress had in mind when it created it.

Chief Justice Taft said in the case of Eastern Transportation Co. v. United States, supra, at page 686, 47 S.Ct. at page 291: "The sovereignty of the United States raises a presumption against its suability, unless it is clearly shown; nor should a court enlarge its liability to suit beyond what the language requires."

It certainly is not shown in this case that Congress intended to extend the suability of the Home Owners' Loan Corporation to actions of tort.

Motion to dismiss allowed without costs.