**WESTERN BANK & TRUST CO. v UNEMPLOYMENT COMPENSATION COMMISSION OF OHIO**

Ohio Appeals, 2nd Dist, Franklin Co.

No. 3071. Decided Oct. 9, 1939.

Peck, Schaeffer, Williams & Gorman, Cincinnati, for plaintiff-appellee.

Thomas J. Herbert, Attorney General, Columbus; John P. Walsh, Asst. Atty. General, Columbus, for defendant-appellant.

**OPINION**

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment in favor of the plaintiff after the trial judge had overruled a demurrer to plaintiff's petition.

The plaintiff is an Ohio Banking Corporation, member and stockholder in the Federal Reserve District and a member of the Federal Reserve System. The Federal Reserve Act provides that State Banks, members of the Federal Reserve System, when designated for that purpose, shall be depositaries of public money and may also be employed as fiscal agents of the United States, and shall perform all reasonable duties as depositaries of public money and financial agents of the United States, as may be required of them; plaintiff claims that by reason of such membership and such liability of being a depositary and fiscal agent it is an instrumentality of the United States within the meaning of §1345-1c(E)4, GC, and should not be required to file its report and make remittance of contributions to the Unemployment Compensation Commission as said Commission insists that it must do by §1345-22, GC. Plaintiff avers that the penalties under §1345-22 GC are void and in violation of Article XIV, United States Constitution and that the unemployment act as applied to plaintiff is void under Article VI of the United States Constitution and that defendants' interpretation of the Act is arbitrary, discriminatory, capricious, unreasonable and therefore void. The action was for a declaratory judgment determining whether or not the plaintiff is amenable to the terms of the Unemployment Compensation Act of Ohio. Defendants demurred to the petition, which demurrer was overruled, defendants elected to stand upon their demurrer and judgment was entered against them. From this judgment the appeal is prosecuted.

Sec. 1345-22 GC of the Unemployment Compensation Act provides:

"It shall be the duty of each member of a firm, and of the president, secretary, general manager, and managing agent of every corporation subject to this Act, to cause such firm or corporation to comply with the provisions of this Act, and any person or any member of such firm or any such officer of such corporation who shall neglect or fail to comply with the provisions of this Act relating to the making of reports or the payment of contributions to the fund shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than five hundred dollars and the costs of prosecution. Such fine when collected shall be paid to the Commission and placed in the unemployment fund. Each day's refusal on the part of any such person, member of such firm or such officer of such corporation, to comply with the provisions of this act, after notice to said person, firm or corporation from the Commission to comply with the same, shall be deemed a separate

offense and be punished as herein provided."

### Sec. 1345-1c(E)4 provides:

"(E) The term 'employment' shall not include: * * *

(4) Service performed in the employ of any governmental unit, municipal or public corporation, political sub-division, or instrumentality of the United States or of one or more states or political sub-divisions in the exercise of purely governmental functions;"

In support of the demurrer appellants urge two propositions: (1) that the plaintiff is not an instrumentality of the United States within the concept of §1345-1c(E)4, GC; (2) the words "in the exercise of purely governmental functions" modify the words "instrumentality of the United States" in the section quoted and if the plaintiff is an instrumentality of the United States it is not engaged in the exercise of purely governmental functions. The plaintiff denies both of these propositions and further urges the constitutional questions heretofore propounded. The trial judge accepted the view of the plaintiff on both of the propositions heretofore stated.

We first give consideration to the meaning of that section of the **Code**, §1345-1c(E)4, defining employment and to the grammatical construction of the language found therein.

It is probable that the words "in the exercise of purely governmental functions" do not modify the words "instrumentality of the United States" but only modify "one or more states or political sub-divisions." We reach this conclusion from an analysis of the context of the section in the light of former legislation rather than upon technical grammatical construction. It would be permissible within the rules of syntax to construe the language as urged by the defendant. However, we agree with the view of the plaintiff that it is immaterial what the phrase modifies because "instrumentality of the United States" cannot be qualified by any language of the Legislature. It has a definite meaning which cannot be modified and it is the obligation of the courts in this case to determine what it is.

What is an instrumentality of the United States? This question has been variously answered by the courts of the land and the briefs of the parties comprehensively set out the cases wherein the question is considered and determined.

We have made considerable independent research with the hope that we might find some applicable cases which counsel had not cited. We were not able to find anything further of consequence and therefore confine our discussion to authorities brought to our attention in the briefs.

There is pertinent analogy between the relationship of Joint Stock Land Banks to Federal Land Banks and that of a State Bank, member of the Federal Reserve System to the Federal Reserve Bank. In the former the Federal Land Bank is an instrumentality of the United States government, Smith v Kansas City Title & Trust Company, 255 U. S. 180, Federal Lank Bank v Priddy, 295 U. S. 229, the Joint Stock Land Bank is not. In the latter the Federal Reserve Bank is a Federal instrumentality; the State Bank is not. A Federal Home Loan Bank is a Federal instrumentality; a member of said Bank is not, Capitol Building & Loan Association v Kansas Commission of Labor and Industry, 8? P. 2nd, 106.

The obligations, duties and authority of Joint Stock Land Banks and Federal Reserve Banks as depositaries and agents of the federal government are defined in identical language in the code of the United States. Joint Stock Land Banks—Section 701, T. 12, U. S. C. A.; Federal Reserve Banks—Section 332, T. 12, U. S. C. A. Joint Stock Land Banks may be designated as depositaries of public money of the United States, employed as fiscal agents of the government and perform all such reasonable duties, as depositaries of public money and financial agents of the government as may be required of them

even as banks, members of the Federal Reserve System, may do. It follows that to that extent they are identical instrumentalities. In this situation the statement of Mr. Justice Stone in the opinion in Federal Land Bank of St. Louis v Priddy, supra, is cogent and carries much weight. At page 707, he says:

"Joint Stock Land Banks are privately owned corporations, organized for profit to their stockholders through the business of making loans or farm mortgages. There is nothing in their organizations and powers to suggest that they are government instrumentalities."

Though this statement of Justice Stone may be obiter it certainly is entitled to the greatest consideration as he is such a potent figure on the United States Supreme Court as now constituted.

Counsel very properly hark back to McCulloch v State of Maryland, et al, 4 Wheat. 316, as the source case for the principles by which "an instrumentality of federal government" may be determined. It should, however, be noted that the case was considering whether or not a bank was a federal instrumentality which was incorporated by the Congress of the United States, whose source, power and duties emanated from the federal government. No distinction such as is presented in the instant case could have been urged in the McCulloch case. It is well to apply the rule announced and approved by Judge Marshall in applying the principles of the various cases cited. The Chief Justice at page 431 said:

"* * * The federalist has been quoted; and the opinions expressed by the authors of that work have been justly supposed to be entitled to great respect in expounding the constitution. No tribute can be paid to them which exceeds their merit; but in applying their opinions to the cases which may arise in the progress of their government, a right to judge of their correctness must be retained; and, to under-

stand the argument we must examine the proposition it maintains and the objection against which it is directed."

It is apparent that there is a line of demarcation between instrumentalities which are essentially those of the federal government and others which have some of the purposes and sustain some obligation to abide the order or control of the federal government. An instance is found in Clallam Co., Washington, et al v United States et al, 263 U. S. 341, the opinion in which case in the District Court is reported in reverse style in 283 Fed. 645. Both courts held that The United States Spruce Products Corporation, a corporation of the State of Washington, was not subject to taxation by the state though organized under powers conferred by the Congress to expedite the production of airplanes for war purposes. In the Federal Reporter at page 649,

"No case has been presented, nor have I found one, where the property of the government, administered through a corporation in executing a **wholly federal employment**, is subject to taxation. **In the instant case the property itself is also the only means and instrumentality by which the purposes and employment could be carried out**, and to tax it would be to destroy it." (Emphasis ours).

And from the opinion of Justice Holmes, page 122,

"But it may be, and in our opinion clearly is when as here not only the agent was created but all the agent's property was acquired and used, **for the sole purpose of producing a weapon for the war. This is not like the case of a corporation having its own purposes as well as those of the United States and interested in profit on its own account. The incorporation and formal erection of new personality was only for the convenience of the United States to carry out its ends.** It is unnecessary to consider whether the fact that the United States owned all the

stock and furnished all the property to the corporation taken by itself would be enough to bring the case within the policy of the rule that exempts property of the United States. **It may be that if the United States saw fit to avail itself of machinery furnished by the state it would not escape the tax on that ground alone."** (Emphasis ours).

In Union Pacific Railroad Company v Peniston, Treasurer, etc., 85 U. S. (18 Wall.) 5, the court had under consideration whether or not the property of the Union Pacific Railroad was exempt from State taxation. In holding that it was not, Mr. Justice Strong, page 791, set out the relationship of the Railroad to the federal government,

"That the Union Pacific Railroad Company was created to subserve, in part at least, the lawful purposes of the National Government; that it was authorized to construct and maintain a railroad and telegraph line along the prescribed route and that grants were made to it and privileges conferred upon it, upon condition that it should, at all times, transmit dispatches over its telegraph line and transport mail, troops and munitions of war, supplies and public stores, upon the railroad, for the government, whenever required to do so by any department thereof, and that the government should at all times have the preference in the use of the same for all the purposes aforesaid, must be conceded."

Justice Strong concludes at page 793:

"It is, therefore, manifest that exemption of Federal agencies from State taxation is dependent not upon the nature of the agents, or upon the mode of their constitution, or upon the fact that they are agents, but upon the effect of the tax; that is, upon the question whether the tax does in truth deprive them of power to serve the government as they were intended to serve it, or does hinder the efficient exercise of their power."

It is from such language as that from which we have quoted that the definition was evolved of an instrumentality of government in North Carolina Unemployment Commission v Wachovia Bank & Trust Company, 2 S. E. (2) 592,

"Generally speaking, however, it may be said that any commission, bureau, corporation or other organization, public in nature, created and wholly owned by the government for the convenient prosecution of its governmental functions existing at the will of its creator, is an instrumentality of government; that any state created corporation or association privately owned and organized and doing business primarily for profit which is granted certain incidental duties or privileges by the Federal government, is not."

This case has been critized by counsel for plaintiff but it is the only one cited which is parallel in all particulars to the question which is before us for determination.

We are of opinion that the test applied by the North Carolina Supreme Court to determine an instrumentality of government is proper as applied to the instant case. Upon this test the plaintiff bank is not such an instrumentality of the Federal government as would exempt it from making payment into the Unemployment Compensation Fund.

Our attention is directed to the opinion of the Internal Revenue Department in interpreting the meaning of Sections 811 (B) 6 and 907 (C) 5 of the Social Security Act in which it was held that State Banks, members of the Federal Reserve System are instrumentalities of the United States and that neither such banks nor their employees are subject to the tax as imposed under Title 8 and 9 of that Act. It is probable that the latter part of this opinion has been superseded and overruled by Helvering, Commissioner, etc. v Gerhardt, 304 U. S. 405. We give consideration

and weight to the ruling on the subject before us but in examining the interpretation of the Internal Revenue Department we note that it bases its conclusion exclusively on the fact that the United State Supreme Court had theretofore held that National Banks were instrumentalities of the United States within meaning of the Social Security Act and a fortiori State Banks, members of the Federal Reserve System, were exempt. We do not believe the premise necessarily supports the conclusion for the reason that National Banks are chartered and have their origin in the Federal Government, and act under its direction and control, and to tax them without the consent of the government might impair a constitutional function.

It is also suggested that the Federal Government has since the inception of the instant case waived the immunity from taxation as relates to State Banks, members of the Federal Reserve System and this is urged as a further reason supporting the position of the appellees. This argument has some place and some weight but it is not conclusive of the question because it is obvious that there was doubt whether or not these banks were immune from State taxation. The legislation removes the doubt, although it is not determinative that the State was not theretofore entitled to the tax.

Without comment or discussion we are satisfied that the Unemployment Compensation Act is not vulnerable to the constitutional attacks made upon it by the plaintiff.

The question of the sufficiency of the petition was raised by demurrer and it has been presented by counsel as though the sustaining or overruling thereof would dispose of the case and no attention has been directed to the form of action. Inasmuch as it takes the form of a petition for declaratory judgment, it occurs to us that the court might have been correct in overruling the demurrer even though plaintiff was not entitled to a favorable decree upon the undisputed facts set forth; that is to say, that the plaintiff would be entitled to a declaratory judgment determining that the state would or would not have the right to collect assessments from it under the Unemployment Compensation Act. The averments of the petition all go to the claims made by the plaintiff in the briefs, and they clearly would sustain the right to a declaratory judgment under §12102-1, GC. The prayer of the petition is for a declaratory judgment to determine whether or not the plaintiff is liable for assessments under the Unemployment Compensation Act, which portion of the prayer is in the alternative, and for temporary restraining order and a permanent injunction, which is for affirmative positive relief. Our query is whether or not, though the court may have been right in overruling the demurrer, can we, as a matter of law, sustain it, if we hold contrary to the viewpoint of plaintiff upon the main issue, namely, its liability for assessments under the Unemployment Compensation Act. If so, it is our position that the demurrer should have been sustained. We merely advert to this question so that counsel may appreciate the scope of this decision. If any legal question is to be raised as to the right to make an order sustaining the demurrer upon the theory that the action was only for declaratory judgment, we would not insist that the demurrer should be sustained. No doubt counsel were in agreement that it was the purpose of the petition to raise a question of law strictly, whether or not the plaintiff was amenable to the requirement of the state act that it pay assessments to the Unemployment Compensation Fund.

With this explanation, we hold that the demurrer should have been sustained.

GEIGER and BARNES, JJ., concur.