Harry **GIBSON** et al., Plaintiffs,

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.**

**Civ. A. No. 37900.**

United States District Court,
E. D. Michigan, S. D.

Aug. 4, 1972.

Harry Gibson, Robert Houston, Lloyd E. Powell, Detroit, Mich., for plaintiffs.

Laurence M. Scoville, Jr., Warren D. Couger, Clark, Klein, Winter, Parsons & Prewitt, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Plaintiffs in this action are mortgagors or have assumed mortgages which are held by the mortgagee defendant, First Federal Savings and Loan Association. Each mortgage provides that plaintiffs are to pay to defendant an amount for taxes, assessments, and premiums on insurance policies on the mortgaged premises in monthly installments which are then paid over by defendant on the annual county and city taxes and insurance premiums when due. These installments are accumulated by the mortgagee in an escrow account.

It is this escrow account and the method of calculation of the monthly installments which are the subject matter of this lawsuit.

Defendant, First Federal Savings and Loan Association, is a savings and loan association organized under the Home Owner's Loan Act of 1933, 12 U.S.C. § 1461 et seq., and is regulated by the Federal Home Loan Bank Board, 12 U.S.C. § 1464. Pursuant to that authority, the Board enacts regulations which direct the manner of collecting and accumulating funds in the escrow account. Specifically, 11 CFR § 545.6–11 states:

"A federal association may require that an equivalent of one-twelfth of the estimated annual taxes, assessments, insurance premiums and other charges on real estate security be paid in advance . . . to enable the association to pay such charges as they become due from the funds so received. . . ."

Plaintiffs allege that the method of payment required by the mortgage is as follows:

"Third: That, in order more fully to protect the security of this mortgage, the Mortgagor . . . in addition to the monthly installments of principal and interest . . ., will pay to the Mortgagee the following sums:

"(b) A sum equal to . . . the premiums that will next become due on policies of fire and hazard insurance covering the mortgaged property, plus taxes and assessments next due on the mortgaged property (all as estimated by the mortgagee) less all sums already paid therefor divided by the number of months to elapse before *one month prior to the dates when such (payments) will become delinquent,* such sums to be held by the Mortgagee in trust to pay said (charges). (Emphasis added.)" Plaintiffs' brief dated April 12, 1972, p. 11.

Plaintiffs claim that defendant's construction of this language results in amounts greater than one-twelfth being paid at one time. This, it is asserted, is because defendant requires payment to be made one full month in advance of due date:

"The effect of Defendant's mortgage loan provision is to collect escrow monies on an equivalent of one-eleventh rate per month of the estimated taxes, assessments, etc., in advance which is greater than in excess and in violation of that provided by the one-

twelfth rate per month provision of the governing regulation." Plaintiffs' brief dated April 12, 1972, p. 11.

Furthermore, plaintiffs contend that the retention of money held in account without a credit of earned interest thereon to that account results in a deprivation of property without due process of law in violation of the Fifth and Fourteenth Amendments.

Defendant has moved to dismiss for lack of jurisdiction. It argues that the action is essentially one based upon contract, and since there is no diversity the action must be dismissed.

Plaintiffs claim jurisdiction in the federal court under Sections 1331, 1337 and 1343 of the Judicial Code (28 U.S.C. § 1331, 1337, 1343).

■ Taking Section 1343 first—it gives jurisdiction to redress any deprivation of civil rights under color of state law. Plaintiffs contend that inasmuch as state process is used to foreclose mortgages, state action is involved. Judicial or executive action, combined with private action, has been held sufficient to find action under color of state law, Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). But not so here, for the nexus between the state action—possible foreclosure and execution of sale by the sheriff and the alleged taking by the defendant—is too remote. To hold that the taking is under color of law would subject every contract or mortgage to constitutional scrutiny. Although the mortgage in question may present legal questions under federal law, enforcement of that contract by the sheriff does not transform an illegal contract into an unconstitutional one.

We next consider possible Section 1331 jurisdiction. Plaintiffs also allege that federal savings and loan associations such as defendant are federal instrumentalities for certain purposes and that its action results in a taking by the Government without due process. If this as-

sertion is supportable, jurisdiction is founded under Section 1331 as general federal question jurisdiction. As to this section it is doubtful that plaintiffs meet the requisite jurisdictional amount of $10,000.[1] But even more importantly, it is apparent that the acts of a savings and loan association are not such to give rise to inference that it is the act of federal government. Plaintiffs in support of their argument that defendant is a federal instrumentality cite Durnin v. Allentown Federal Savings and Loan Ass'n., 218 F.Supp. 716 (E.D.Pa.1963). That court stated: "A federal savings and loan association is without a doubt an instrumentality of the United States." 218 F.Supp. at 718. In that case three cases are cited which do not support that blanket proposition. United States v. Harper, 241 F.2d 103 (7th Cir. 1957), holds that an indictment for bank robbery was not fatally defective because it had failed to allege that the institution was insured by the Federal Savings and Loan Insurance Corporation. This was so because all savings and loan associations are so insured and the associations are "federal instrumentalities." People of State of California v. Coast Federal Savings and Loan Ass'n., 98 F.Supp. 311, 316 (S.D.Cal.1951), also relied upon in *Durnin, supra,* was an action by the State of California to apply certain California banking laws to a federal savings and loan association. The court held that these associations which are organized pursuant to federal law are completely regulated by Congress and the federal government having preempted the field, state law was inapplicable. See also Federal Savings and Loan Insurance Corp. v. Kearney Trust Co., 151 F.2d 720 (8th Cir. 1945) (action by Federal Savings and Loan Insurance Corporation as assignee of claims of a savings and loan association) and First Federal Savings & Loan Ass'n. v. Loomis, 97 F.2d 831 (7th Cir. 1938) (upholding constitutionality of act).

It is important tó distinguish in the cases the precise parties involved. A

1. See discussion at note 3 *infra.*

predecessor to the savings and loan association was the Home Owners' Loan Corporation, organized under 12 U.S.C. § 1463(a), repealed in P.L. 89–554 § 8 (a) 1966. That section specifically designated the corporation as an instrumentality of the United States. The stock of such a corporation was subscribed for by the Secretary of the Treasury on behalf of the United States; it was exempt from taxation and all dividends that were declared were to be paid to the United States. Several cases held that the Home Owners' Loan Corporation was not liable in tort because of sovereign immunity. See Schevitzky v. Home Owners' Loan Corporation, 26 F.Supp. 311 (E.D.Mo.1939) ; Walker v. Home Owners' Loan Corporation, 25 F. Supp. 589 (S.D.Cal.1938), but see Pennell v. Home Owners' Loan Corporation, 21 F.Supp. 497 (D.Maine 1937) ; Prato v. Home Owners' Loan Corporation, 24 F. Supp. 844 (D.Mass.1938).

In sharp distinction is the organization of present-day federal savings and loan associations. The charter is issued by the Federal Home Loan Bank Board, but the capital is raised by and through its membership. "Holders of savings accounts and obligors of an association shall . . . be members." Section 1464(b) (1). The Secretary of the Treasury *may* subscribe for preferred shares, and must if requested by the Board. Section 1464(g). Furthermore, it is directed that sums be set aside to retire any interest of the United States. Taxation by a state is not forbidden. It is only forbidden to tax at a greater rate than other cooperative or mutual home financing and thrift organizations. Section 1464(h). Importantly, the Act nowhere states that a savings and loan

association is an instrumentality of the United States. What is stated is that an association " . . . may be employed as fiscal agent . . . and . . may act as agent for any other instrumentality of the United States when designated . . . " Section 1464(k).

■ Thus it is clear that a savings and loan association, even though completely regulated by Congress, is an organization of private persons and does not enjoy the identity with the government that the Home Owners' Loan Corporation, or its regulatory agency, the Federal Home Loan Bank Board, does.[2] To speak of the defendant as a federal instrumentality with respect to its loan function is a complete misnomer, and plaintiffs' cause of action insofar as it rests upon any constitutional basis must be dismissed.

Plaintiffs also claim federal jurisdiction because of a cause of action raised by defendant's failure to follow the statute and regulations promulgated by the Federal Home Loan Bank Board. Jurisdiction is based alternatively on Sections 1331 or 1337.

■ But to reiterate, a jurisdictional prerequisite of Section 1331, plaintiffs must still meet the $10,000 minimum amount in controversy. It is clear from the affidavit of defendant, and plaintiffs do not contest this, that as to the named plaintiffs, at no time could the amounts in escrow ever satisfy that minimum.[3] Plaintiffs, however, hope to proceed as representatives of a class. Without ruling on that contention, since it is not yet before the court, even if this case were determined to be a proper class action, the individual claims of the members of the class may not be aggregated

2. Other organizations which are connected with savings and loan associations and are federal instrumentalities are the Federal Home Loan Bank Board, 12 U.S.C. § 1442 et seq.; the Federal Home Loan Bank Board, 12 U.S.C. § 1437, and the Federal Savings and Loan Insurance Corporation, 12 U.S.C. § 1725. The federal character of these institutions should not be allowed to be confused with

the savings and loan associations themselves.

3. As to plaintiff Gibson, the highest amount in escrow was $624.13 and with interest from that date, $842.58; as to Houston (who had two mortgages), these amounts would be $682.62 and $819.14, and $723.83 and $904.79. For Johnson, these amounts are $617.62 and $926.43.

so as to meet the $10,000 minimum. In Synder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the Court ruled:

"Aggregation has been permitted only (1) in cases in which a single plaintiff seeks to aggregate two or more of his owns claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." Snyder v. Harris, 394 U.S. 332 at 335, 89 S.Ct. at 1056.

The facts in this case are closely analogous to the facts in *Snyder*. There, a stockholders action was brought. The claim was based on the failure of the Board of Directors who had sold their shares in excess of the fair market value to distribute that excess to the other shareholders. In a companion case to Snyder, Gas Service Co. v. Coburn, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the company had illegally billed and collected a city franchise tax. Plaintiff there sought recovery for the entire class of customers. The Supreme Court held aggregation impermissible. In this case, plaintiffs seek recovery of excess amounts held in escrow accounts and for other relief. Although the interpretation of the applicable procedure raises common legal questions, each separate account raises distinct questions of accounting and recovery. These claims may not by aggregation meet the minimum amount under Section 1331.

■ Jurisdiction under Section 1337 does not require a minimum amount. That statute states: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

The case of Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), is inapposite. The Court (per Cardozo, J.) held that federal question jurisdiction did not exist. In *Gully*, as the Court noted, however, one construction of state law would have resolved the entire controversy making the federal question moot. That is not the case here. In the present case the asserted right will be supported if the federal regulation is given one construction and not supported if the regulation is given another construction.

A second, perhaps more persuasive, distinction also exists. In *Gully*, the federal law *permitted* the state to enact legislation. In the present case, the federal regulation *limits* the freedom to contract under state law.

Where federal power is used as a limitation on state law (as here), a different question is presented than if federal power is used to permit an action under state law, as in *Gully, supra*. The test set out by the Court in *Gully*, at 112, 57 S.Ct. at 97 is that "[T]he right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another [citations omitted]." The present case presents such a question. So the critical questions become first, whether plaintiffs have stated a cause of action, and second, whether such arises under an act regulating commerce.

To answer the second question first, it appears clear that the Home Owners' Loan Act is an act regulating commerce. In Murphy v. Colonial Federal Savings and Loan Ass'n., 388 F.2d 609 (2nd Cir. 1967), plaintiffs sought to obtain membership lists of persons eligible to vote for directorships at the defendant institution. Defendant moved to dismiss for lack of jurisdiction. Judge Friendly, writing for the court, said:

"It is true that federal regulation of finance is not grounded in the commerce power alone. As Chief Justice Hughes explained in Norman v. B. & O. R. R., 294 U.S. 240, 303, 55 S.Ct. 407, 414, 79 L.Ed. 885 (1935):

" 'The broad and comprehensive national authority over the subjects of revenue, finance and currency is derived from the aggregate of the pow-

ers granted to the Congress, embracing the powers to lay and collect taxes, to borrow money, to regulate commerce with foreign nations and among the several states, to coin money, regulate the value thereof, and of foreign coin, and fix the standards of weights and measures, and the added express power "to make all laws which shall be necessary and proper for carrying into execution" the other enumerated powers." '

" . . . But to found jurisdiction upon § 1337, it is not requisite that the commerce clause be the exclusive source of Federal power; it suffices that it be a significant one." *Murphy, supra* at 615.

Thus, that aspect necessary for jurisdiction under Section 1337 is satisfied.

Returning now to the first question—may this court imply a cause of action for damages in favor of plaintiffs for failure to follow applicable federal regulations. J. I. Case Co. v. Borak, 375 U.S. 901, 84 S.Ct. 195, 11 L.Ed.2d 143 (1963).

When the regulations promulgated by the Home Loan Bank Board are analyzed, it appears somewhat analogous to the situation in which a regulatory agency has established rates and tariffs for carriers. (In the case at bar, the Board has regulated the rate of collection for a savings and loan association.) With regard to recovery of excess tariffs or discrimination in tariffs, in spite of lack of specific statutory authority, the courts have not hesitated to find federal jurisdiction under Section 1337 to recover damages, or the excess charged. Similarly, in Wills v. Trans World Airlines, Inc., 200 F.Supp. 360 (S.D.Cal.1961), plaintiff had been bumped from a flight on which he had confirmed reservations due to overbooking. The statute in question, 49 U.S.C. § 1374(b), prohibited preferences or discrimination by airlines, but did not specifically provide a cause of action in favor of one who was so injured. The court held that the action could be implied and that actual and exemplary damages could be awarded. The reasoning of the court:

"Without judicial intervention to redress past violations of the statute, the rights of air passengers, as declared in the Act, to travel without undue preference or unjust discrimination would be robbed of vitality and the purposes of the Act substantially thwarted. It cannot be presumed, nonetheless, that the Congress intended no relief for past infringement of the Federal rights of air passengers there declared. [citations omitted] Indeed, 'where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.' [Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946).]" 200 F.Supp. 360 at 364, 365.

The same result has been reached with respect to railroad freight overcharges. See Bernstein Bros. Pipe & Machinery Co. v. Denver & R. G. W. R. Co., 193 F.2d 441 (10th Cir. 1951); S. Patti Const. Co. v. Union Pac. R. Co., 72 F.Supp. 101 (W.D.Mo.1947).

The Second Circuit went even further in Ivy Broadcasting Co. v. American Telephone and Telegraph Co., 391 F.2d 486 (2nd Cir. 1968). That court held that there was federal jurisdiction for negligence and breach of contract action in the installation of telephone lines. In spite of the absence of any violation of the Communications Act, the court reasoned that since ". . . it involves a contract between the provider and the user of the regulated service," liability should be implied. At 490.

"The question then is whether the federal statutory scheme for the regulation of interstate communications service indicates a congressional policy requiring that the duties and liabilities under contracts for the provision of such service be determined according to federal rules in order to assure uniformity of rates and service." 391 F.2d at 490.

The court answered this question in the affirmative. (See also Caulfield v. United States Department of Agriculture, 293 F.2d 217 (5th Cir. 1961), which held that a complaint by a tenant against his landlord for termination of a lease in violation of the Soil Bank Act (7 U.S.C. § 1831) was properly brought in federal court.)

The Second Circuit took the same approach in *Murphy, supra*. There it held that members of the savings and loan associations were entitled to receive membership lists:

> "Question naturally arises whether a member desiring to enlist the aid of others in an election is entitled to find out who they are. Such an issue, which requires a fleshing out of the Board's regulations is one of federal law. [citation omitted] . . . Congress could hardly have intended that the rights of members of federal savings and loan associations to fair elections should vary with quirks of local law." 388 F.2d at 611.

A similar approach was reached in Durnin v. Allentown Federal Savings and Loan Ass'n., 218 F.Supp. 716 (E.D.Pa. 1963), contra Member v. Second Federal Savings and Loan Ass'n. of Boston, 275 F.Supp. 170 (D.Mass.1967).

These considerations requiring a uniform federal rule are apparent here. Construction of this federal banking regulation should not be left to the varying interpretations of state courts.

It is important to recall the purpose behind the Home Owners' Loan Act of 1933, to provide relief to distressed home owners. The Act states this purpose: "In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes. . . " 12 U.S. C. § 1464. It appears to be entirely within the intent of this remedial legislation to provide a federal forum and a remedy for alleged violations of the Act.

■ Defendant's final contention is that plaintiffs should first apply to the Home Loan Bank Board for relief. The

Board, however, cannot grant complete remedial relief (only injunctive relief), and it does not appear from the administrative regulations that plaintiffs will be able to trigger the administrative machinery to obtain a remedy. Finally, the heart of plaintiffs' claim is not with the regulation, but with the defendant's interpretation of it. Resort to the Home Loan Bank Board would not in any way alleviate plaintiffs' complaint if relief is warranted.

Accordingly, insofar as plaintiffs' claims rest upon constitutional bases under Section 1343 and Section 1331, these will be dismissed. Defendant's motion to dismiss plaintiffs' complaint for lack of jurisdiction under Section 1337 is denied.