**Miley D. SCHLAKE, Appellee and Cross-Appellant,**

v.

**BEATRICE PRODUCTION CREDIT ASSOCIATION, Appellant and Cross-Appellee,**

**and**

**Fred R. Bischoff and Vincent Reinert, Cross-Appellees.**

**Nos. 78–1440, 78–1485.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1978.

Decided March 19, 1979.

Robert C. Guenzel (argued), Steven G. Seglin and Roberta S. Stick, Lincoln, Neb., and Arnold E. Wullschleger, Beatrice, Neb., on brief, for appellant and cross-appellee.

Daniel E. Wherry (argued), and Terry K. Barber, Lincoln, Neb., on brief, for appellee and cross-appellant.

Before GIBSON, Chief Judge, and BRIGHT and HENLEY, Circuit Judges.

GIBSON, Chief Judge.

Miley D. Schlake brought this action for an alleged violation of the due process rights guaranteed to him under the fifth amendment to the United States Constitution.[1] Schlake contends, and the jury apparently found, that the Beatrice Production Credit Association (Beatrice) made a commitment to lend him $251,374.17 but later reduced that commitment to $166,911.07 without timely notice to him. The jury returned a verdict against Beatrice in the amount of $4,000 and against Bischoff and Reinert[2] in the amount of $2,000 each. The District Court in part granted the defendants' motions for judgment notwithstanding the verdict and reduced the judgment to the nominal amount of $1.00 against each defendant. The District Court ruled that Schlake had failed to show that he could have received credit elsewhere had notice been given, thus he had failed to establish actual damage. Beatrice appeals because of the precedential impact of the decision. Schlake appeals from the reduction of the damages award. We reverse and hold that Schlake was not entitled to recover even nominal damages against Beatrice.

Schlake farms near Firth in Gage County, Nebraska. From approximately 1956 until at least 1974, Schlake annually borrowed money from Beatrice to carry on his farming operation. Each year he would complete a loan application with the assistance of loan officers and apparently these applications were usually approved in full. Schlake visited the Beatrice office on or about September 30, 1974, and filled out an application for a $251,374.17 loan for the 1975 crop year with the assistance of an inexperienced loan officer. Various documents were signed and Schlake received what he claims he understood to be a loan commitment for the full amount. That loan officer had no authority to commit for a loan in the amount requested. Schlake knew or should have known that the loan would have to be approved by higher officials of the association. In fact, the loan application was later reduced to $166,911.67 by Beatrice personnel due to the poor profit history of some of Schlake's endeavors.

The exact details are disputed but it is admitted that in mid-October 1974 Schlake and his wife received a copy of the amended application. It is also clear that at some time loan documents reflecting the reduced loan were signed and dated September 30, 1974. Despite these facts, Schlake contends that Beatrice did not notify him of the commitment reduction until May 1975.[3] At that time he could not immediately obtain other financing and was unable to take advantage of market situations favorable for feeding cattle. Schlake contends that this resulted in profits being lost which are recoverable in this action.

On appeal, Beatrice seeks to overturn the District Court holding that it could be liable under the fifth amendment in the factual situation presented. Specifically, Beatrice complains that the District Court erroneously defined "commitment." This permitted the jury to find a fifth amendment property interest in a "commitment" based on what Schlake reasonably believed in light of the prior course of dealing between Schlake and Beatrice. Further, the association urges that the District Court should have directed a verdict in favor of Beatrice because Schlake admitted receipt of the amended application within fifteen days of the original application. Schlake, on the other hand, seeks reinstatement of the jury verdict and claims there was sufficient evidence of damages proximately caused by the defendants. At our request, the parties

---

1. The fifth amendment provides in relevant part: "No person shall be * * * deprived of life, liberty, or property, without due process of law; * * *."

2. Fred R. Bischoff and Vincent Reinert were officers or employees of Beatrice Production Credit Association.

3. In February 1975 and May 1975 Schlake issued sight drafts in excess of his loan maximum. Each time Schlake was informed and Beatrice made an additional loan to cover the draft. In May, Beatrice personnel informed Schlake the association would not finance him in the future.

also briefed and argued the question of whether the District Court had subject matter jurisdiction to hear a cause of action brought directly under the fifth amendment.

▆ The jurisdictional issue causes us considerable difficulty. We are certain that the due process clause of the fifth amendment does not constitutionalize contract law. Nor is a constitutional violation committed when a governmental agency breaches a contract it has entered into in the commercial world. On the other hand, we are confronted with *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595, 608–10 (1978). In *Duke Power* the Supreme Court held that the federal courts had subject matter jurisdiction over a challenge to the United States Nuclear Regulatory Commission's limitations on the potential liability of power companies in the event of a nuclear accident. Jurisdiction was based on the general federal question statute, 28 U.S.C. § 1331(a), for an arguable violation of the fifth amendment due process provision protecting rights in property. In the present case the District Court made extensive findings regarding the pervasive involvement of the federal government in the creation and operation of the production credit associations. In granting the notes, debentures, and other obligations of the associations special tax status, Congress has declared, "Each production credit association and its obligations are instrumentalities of the United States * * *." 12 U.S.C. § 2098. Under these circumstances we conclude that there may be a colorable basis for jurisdiction in this case.[4] We, however, feel that neither the framers of the Constitution nor the people at the time of the adoption of the fourteenth amendment intended that the "due process clause" should serve to rationalize all actions sounding in tort or contract into federal cases.

▆ Turning to the merits of Schlake's claim, we hold that in a commercial setting a person has no constitutionally protected property interest arising from a mere application for a loan from an "instrumentality of the United States" other than that the application will be considered in the regular course of business. Although Schlake sought to portray himself as unsophisticated on financial matters, the fact remains that he was operating a business with assets of approximately $200,000 and was seeking a loan of over a quarter of a million dollars. We do not believe that the filing of an application with a loan officer meant that Beatrice was committed to lending the entire amount.

In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court held that a teacher hired for one year without tenure had no property interest in renewal of his contract. The Court noted that earlier cases had developed certain attributes of "property" interests protected by procedural due process.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. * * *
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577, 92 S.Ct. at 2709. The Second Circuit relied on *Roth* in stating that a postal star route contractor did not have a statutory entitlement to or reasonable expectation of contract renewals.

---

4. We are aware that the Court in *Duke Power* specifically declined to decide whether "appellees' cause of action under the Constitution is one generally to be recognized * * *." 438 U.S. at 71, 98 S.Ct. at 2630, 57 L.Ed.2d at 610. As in *Duke Power,* the record before us is inadequate to decide this question. The present case is similar to *Duke Power* also in that even with a finding of subject matter jurisdiction, plaintiff is factually not entitled to relief.

*Myers & Myers, Inc. v. United States Postal Service,* 527 F.2d 1252, 1258 (1975).

Certainly the filing of a loan application, even in light of prior successful applications, does not in itself create a legal entitlement to receiving that loan. The Production Credit Association was created under federal law to make loans to credit-worthy applicants within the resources available to the credit association. Obviously loans in large amounts such as this would have to be approved by a superior loan officer. Each credit application must stand on its own merits and a person's credit-worthiness can change drastically within as short a period of time as a year or less. Thus, as a matter of commercial practice and of common sense, there is no continuing obligation to make loans in any specified amount to any individual or company absent a contract or commitment to that effect. Thus, the mere filing of the loan application did not create a property interest.

It is unnecessary for us to decide whether in some extraordinary situation a property interest could arise from an informal loan commitment, because even assuming that Schlake had such an interest, he was given notice of the reduction within a reasonable time. We agree that the duty to know the contents of documents is not absolute, but rather depends on what a reasonable and prudent person would understand in similar circumstances. However, Schlake admitted receiving from his wife copies of the security agreement and note reflecting the reduced loan amount in October 1974.[5] This was far in advance of May 1975 when he contends he needed the additional funds. For purposes of notice under the fifth amendment this met the association's duty, assuming it had one.

In our view the actions of Beatrice in dealing with Schlake were reasonable. It made an effort to inform Schlake of the loan reduction. Schlake claims he chose to ignore the reduced note and security agreement as "just papers." His behavior was neither prudent nor reasonable and cannot form the basis for recovery for a violation of the fifth amendment.

Since Fred R. Bischoff and Vincent Reinert did not join in Beatrice's appeal, we must consider Schlake's contention that the District Court's reduction of the damages due from them to a nominal amount was improper. Our review of the record convinces us that Schlake failed to establish that he would have been able to secure additional financing elsewhere had he fully understood that he would not receive the full amount on the application. To decide otherwise would be to sanction the recovery of substantial damages on the basis of un-

---

5. On direct examination Schlake referred to a document his wife received from Beatrice on October 14, 1974, and the following took place:

Q. What is that document
A. It's another—just a copy of an application form.
Q. Is it another photocopy of the application you made on September 30, 1974?
A. No.
Q. Is it signed by you?
A. Yes.
Q. Are you indicating that it is not the same as it was when you signed it?
A. Yes.
Q. How is that document different than it was when you signed?
A. It's primarily the same but the bottom figure comes up $166,911.67.
Q. Are there any other differences besides the bottom figure?
A. Yes.
Q. What are those differences—those changes?
A. They would be on the top line up there on the cash rent repayment and such stuff. They had twenty-nine, eighty on the first one and on this one here they have got $13,980.
Q. Were there any other changes on that document?
A. I don't believe so here.
Q. That is the change that you noticed when you saw that document?
A. That is the change I noticed.
Q. When did you first see that document?
A. It would probably be October 15 or so.
Q. Did your wife bring that document home with her?
A. Yes, she brought it home with her.
Q. And she showed it to you?
A. Yes.
Q. And did she indicate to you that she had, had a conversation with anyone at the Beatrice PCA?
A. Yes.
Q. On October 14?
A. Yes.

founded speculation. Schlake was in poor financial condition throughout the relevant time period. He had a history of losses on cattle feeding operations. Under these circumstances there is no reason to think that Schlake would have been able to secure financing for feeding cattle during the last months of 1974.

The judgment against Beatrice Production Credit Association is reversed. In all other respects the judgment of the District Court is affirmed, and costs are assessed against Schlake, appellee and cross-appellant.