**LPR LAND HOLDINGS, et al., Plaintiffs,**

**v.**

**FEDERAL LAND BANK OF SAINT PAUL, et al., Defendants.**

**Civ. No. 86–73072.**

United States District Court, E.D. Michigan, S.D.

Jan. 6, 1987.

Frederick Hoops, Birmingham, Mich., for plaintiffs.

Michael Woodworth, Lansing, Mich., for defendants.

## OPINION AND ORDER

COHN, District Judge.

This is an action for damages and specific performance of a contract for the sale of real estate. Plaintiffs seek to invoke the Court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(b), federal question and diversity, respectively. They allege a procedural due process violation and two pendent state claims, all based upon defendant Federal Land Bank of Saint Paul's (the Bank) failure to honor plaintiff's written right of first refusal to purchase five tracts of real estate. Presently before the Court is the motion of defendants the Bank, James Bremer, Larry Ackerson and Doyle Dingman to dismiss for lack of subject matter jurisdiction. Defendants assert that there is not complete diversity between the parties and that governmental action is not sufficiently implicated to support the due process claim. For the reasons which follow, defendants' motion is GRANTED, and the complaint is DISMISSED.

### I. Fact Allegations

#### A.

LPR Land Holdings (LPR) is a Michigan limited partnership with a principal place of business in Michigan. Frederick and Florence Akin (the Akins), husband and wife, are Michigan citizens. Kirk and Luanne Akin (collectively, the Akins), husband and wife, are Michigan citizens. Edward Murphy is a Michigan citizen.

The Bank is a federally chartered corporation with its principal place of business in Minnesota. David and Patricia Upton (the Uptons), husband and wife, are Michigan citizens. Danny and Susan Curtis (the Curtises), husband and wife, are Michigan citizens. James Bremer, Larry Ackerson and Doyle Dingman are agents of the Bank and Michigan citizens.

#### B.

On July 23, 1985, the Bank granted the Akins a written right of first refusal covering five tracts of real estate in Gratiot County, Michigan (hereinafter Parcels One, Two and Three). The Bank was obligated to give the Akins notice of a third party's bona fide offer to purchase the real estate within five days of the offer. Then, the Akins enjoyed a fifteen-day option period within which they could notify the Bank in writing of their intention to purchase the real estate on the same terms and conditions as those contained in the outside offer.

On April 10, 1986, the Bank received an offer to purchase Parcel Three from the Curtises and Parcel Two from the Uptons. On April 15, 1985, the Bank received an offer to purchase Parcel One from Lyle Becker (Becker). On April 21, 1986, it notified the Akins of the prospective sales of the three parcels.

On April 22, 1986, the Akins notified the Bank in writing of their intention to exercise their rights to purchase the three parcels pursuant to their right of first refusal. On May 9, 1986, the Bank acknowledged to Frederick Akin that he had properly exercised the right of first refusal and established a tentative closing date for Parcel One of May 15, 1986.

On May 13, 1986, Frederick Akin informed the Bank that he could not complete the financing to close the purchase of Parcel One by May 15, 1986; the Bank declined his request to extend the closing date. However, on May 15, 1986, the Bank extended the time for closing the sale of Parcel One to Becker beyond May 15, 1986, without notice to the Akins.

On May 20, 1986, the Akins assigned their right of first refusal on the three parcels to LPR. At a meeting with the Bank on the same day, LPR offered to purchase all three parcels on the exact same terms and conditions as the three outside offers. The Bank informed LPR that it must be qualified in accordance with the Bank's credit underwriting standards. Thus, LPR presented balance sheet information and bank credit references and further offered to provide other information as the Bank might reasonably require.

By letter on May 21, 1986, the Bank informed LPR that their right of first refusal on Parcel One had expired on May 15, 1986, and demanded further credit information from LPR which the Bank knew was not available to LPR and not required with respect to the outside offers. The Bank subsequently sold Parcels Two and Three to the Uptons and the Curtises.

## II. The Claims

LPR complains of the actions of the Bank in three counts. Counts II and III are pendent state law claims. Count I alleges that the Bank is an instrumentality of the federal government, and therefore its procedures in connection with the sales of Parcels One, Two and Three and the conspiratorial actions of the Bank and its agents denied plaintiffs due process of law under the Fifth Amendment to the Constitution in that plaintiffs were denied fair notice of the time and terms of sale necessary to conclude the purchase of the three parcels. Plaintiffs ask the Court to cancel any completed sales of the parcels and require the Bank to sell the parcels to LPR. Plaintiffs also ask for money damages against the Bank and its agents, jointly and severally.

## III. Diversity Jurisdiction

28 U.S.C. § 1332 states:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between

    (1) citizens of different states....

Diversity jurisdiction is not available when *any* plaintiff is a citizen of the same state as *any* defendant. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). Because all of the plaintiffs are Michigan citizens and all of the individual defendants are Michigan citizens, diversity jurisdiction is absent.

## IV. Federal Question Jurisdiction

■ The only other ground asserted by plaintiffs invoking the jurisdiction of the Court is federal question jurisdiction, 28 U.S.C. § 1331. They claim that the Bank and its agents, Bremer, Ackerson and Dingman, have violated their rights to due process of law under the fifth amendment. However, a fifth amendment due process claim cannot be maintained without implicating federal governmental action. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). The established rule is that the provisions of the federal due process clause are inhibitions upon the power of government and its agencies rather than upon the freedom of action of private persons. *Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461–62, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952).

To implicate governmental action, plaintiffs allege that the Bank is an "instrumentality of the federal government." Because it is plaintiffs who have invoked the jurisdiction of the Court, they have the burden of affirmatively alleging and establishing the existence of such jurisdiction. J. Moore, *Moore's Federal Practice* ¶ 0.60[3], [4] at 621, 627 (1986). Under Article III of the Constitution, federal courts are courts of limited jurisdiction; thus "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action" unless jurisdiction is established. *See* Fed.R.Civ.P. 12(h).

The issue therefore becomes whether alleging that the Bank is an "instrumentality of the United States" sufficiently implicates governmental action for purposes of the due process clause, such that it is clear that the Court has jurisdiction to proceed with the due process cause of action. By claiming that federal land banks are "instrumentalities of the United States," plaintiffs are undoubtedly referring to the federal statute which established the banks. 12 U.S.C. § 2011, the statute in question, actually states that the land banks are "federally chartered instrumentalities of the United States." As such, each land bank is a federal corporation. *Id.* § 2012. Each bank is also heavily regulated by the federal government. *Id.* §§ 2001 *et seq.*

■ One basis for arguing that the actions of the Bank's agents are tantamount to governmental action subject to the strictures of the fifth amendment is the fact that the Bank is incorporated pursuant to an Act of Congress. However, 28 U.S.C. § 1349 states:

The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock.

Plaintiffs have not alleged that the United States owns more than one-half of the Bank's capital stock and indeed, they could not do so. Congress has expressly declared that the Farm Credit System, which includes the system of federal land banks, be a farmer-owned cooperative. 12 U.S.C. § 2001. The objective of 12 U.S.C. §§ 2001 *et seq.* is to "encourage farmer- and rancher-borrowers participation in the management, control, and ownership of a permanent system of credit for agriculture...." *Id.* If the Bank is abiding by the statute, the voting stock of each bank will be held predominantly, if not completely, by private citizen-borrowers. *See* 12 U.S.C. §§ 2013(b), 2031, 2034. Therefore, 28 U.S.C. § 1349 renders the Bank subject to the regular rules governing jurisdiction of civil cases in federal court. *Accord, DeLaigle v. Federal Land Bank of Columbia,* 568 F.Supp. 1432 (S.D.Ga.1983).

Another basis for arguing that the actions of the Bank's agents constitute sufficient governmental action to support a due process claim is that the Bank is an "agency" of the federal government. 28 U.S.C. § 451 defines "agency" to include:

. . . .

[A]ny department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

One district court has determined that if a land bank was considered an agency of the federal government merely because it was chartered and regulated by the federal government, 28 U.S.C. § 1349 would be rendered meaningless. *Federal Land Bank of Columbia v. Cotton,* 410 F.Supp. 169, 171 (N.D.Ga.1975). There the court further explained that when sections 451 and 1349 are read together, it is clear that a federally-chartered corporation is not an "agency" unless the government has a substantial proprietary interest in it, or at least exercises considerable control over its operations and policies. Such is not the case with federal land banks. *Id.; accord, Federal Land Bank of St. Louis v. Keiser,* 628 F.Supp. 769, 771–73 (C.D.Ill.1986). The court finally stated that land banks were "obviously meant to be private, rather than government corporation[s] which would merely be subject to various federal regulations." *Id.*

When confronted with the issue of whether the actions of the agents of land banks or their affiliates (production credit associations) constitute sufficient governmental action for purposes of the fifth amendment due process or "taking" clauses, two district courts have held that they did not. *DeLaigle,* 568 F.Supp. at 1439 (due process clause); *Birbeck v. Southern New England Production Credit Ass'n,* 606 F.Supp. 1030, 1035 (D.Conn.1985) (taking clause). The *DeLaigle* Court stated, after reviewing the arguments discussed above:

The Court concludes that the admittedly heavy regulation of federal land banks does not transform these entities into governmental agencies.... [T]he Court holds that the Federal Land Bank of Columbia is a private corporation without sufficient governmental involvement to support a cause of action under the federal due process clause of the Fifth Amendment.

568 F.Supp. at 1439.

■ Here, plaintiffs cite *Schlake v. Beatrice Production Credit Ass'n,* 596 F.2d 278 (8th Cir.1979), for the proposition that

the Court has jurisdiction over this case. In *Schlake,* plaintiff brought a procedural due process claim against an affiliate of a federal land bank after it reduced a loan commitment to plaintiff without notice. *Id.* at 280. The court of appeals initially stated that "[t]he jurisdictional issue causes us considerable difficulty. We are certain that the due process clause of the fifth amendment does not constitutionalize contract law." *Id.* at 281. The court of appeals went on to say: "Nor is a constitutional violation committed when a *governmental agency* breaches a contract it has entered into in the commercial world." *Id.* (emphasis added). The court of appeals characterized federal land banks and their affiliates as "governmental agencies" without citing any other support for that proposition. This conclusion is contrary to the authorities cited above which held, through an analysis of the applicable federal statutes, that land banks are not governmental agencies, but are merely privately-owned federal corporations.

Further, the *Schlake* Court stated:

In the present case the District Court made extensive findings regarding the pervasive involvement of the federal government in the creation and operation of the production credit associations. In granting the notes, debentures, and other obligations of the associations special tax status, Congress has declared, "Each production credit association and its obligations are instrumentalities of the United States * * *." 12 U.S.C. § 2098. Under these circumstances we conclude that there may be a colorable basis for jurisdiction in this case.[4] We, however, feel that neither the framers of the Constitution nor the people at the time of the adoption of the fourteenth amendment intended that the "due process clause" should serve to rationalize all actions sounding in tort or contract into federal cases.

596 F.2d at 281.

Footnote 4 explained that "even with a finding of subject matter jurisdiction, plaintiff is factually not entitled to relief." *Id.*

at n. 4. The district court in *Birbeck* addressed *Schlake* in a footnote as follows:

. . . .

In their memorandum, the defendants point out that the court's opinion in *Schlake* suggests serious doubt as to its jurisdiction and appears to determine that jurisdiction exists only in order to permit a final resolution of an already fully tried and appealed case without forcing the parties to relitigate it in state court. In contrast the instant litigation is at a point where dismissal will not lead to judicial inefficiency. Here there are no practical reasons, as there might have been in *Schlake,* to extend this court's jurisdictional reach beyond legitimate and supportable boundaries. To the extent that *Schlake* suggests that there is a colorable basis for jurisdiction over a case involving a production credit association simply because of the extent of federal government involvement in the creation and regulation of such entities, I do not agree.

606 F.Supp. at 1034 n. 1.

Similar to *Birbeck,* and contrary to *Schlake,* no judicial inefficiency will result if this case is dismissed at this time at the trial level, especially considering that along with the pending motion to dismiss, defendants also have pending a motion for abstention and stay of the present proceedings. Three days before this action was filed, the Bank filed a complaint in the Gratiot County Circuit Court seeking to quiet title to the three parcels.

Insofar as *Schlake* predicates federal jurisdiction on the ground that land banks are pervasively regulated by the federal government, that position appears to be contrary to the landmark "state action" case of *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In *Jackson,* the Court explained that:

[T]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of [due process]. . . . Nor

292

does the fact that the regulation is extensive and detailed ... do so.

*Id.* at 350, 95 S.Ct. at 453.

Analogously, the mere fact that the land banks are subject to extensive federal regulation does not convert its actions into actions of the federal government for purposes of the due process clause. The test formulated by the Supreme Court in *Jackson* is whether there is a "sufficiently close nexus" between the *government* and the *challenged action* of the regulated entity such that the action of the latter may be fairly treated as that of the government itself. *Id.* at 351, 95 S.Ct. at 453.

*Jackson* involved a due process challenge to the practice of a utility of terminating a person's electrical service without notice when the account was delinquent. *Id.* at 348, 95 S.Ct. at 452. On these facts, the Supreme Court stated that "where the [state utility] commission has not put its own weight on the side of the proposed practice by ordering it," the practice of terminating electrical service without notice to the customer is not transformed into state action. *Id.* at 357, 95 S.Ct. at 456. According to *Jackson* therefore, more is needed than a mere allegation that the Bank is an "instrumentality of the United States."

Plaintiffs cite *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65 (1941), and *Greene County Nat'l Farm Loan Ass'n v. Federal Land Bank of Louisville*, 152 F.2d 215 (6th Cir.1945), for the proposition that federal land banks and their affiliates are "instrumentalities of the federal government" engaged in the performance of an important "governmental function." Neither of these cases arose in the context of a due process challenge to a bank's actions. *Bismarck* involved the issue of whether land banks are exempt from state taxation. 314 U.S. at 98, 62 S.Ct. at 3. The *Bismarck* Court implied that all activities of federal corporations are governmental action. *Id.* at 102, 62 S.Ct. at 5. However, this statement from a 1941 case seems to be in conflict with 28 U.S.C.

§§ 451 and 1349 and is also placed in doubt in light of *Jackson* and the general trend to restrict the parameters of what constitutes governmental action. The same criticisms can be made of *Greene*. *Greene* relies upon *Federal Land Bank v. Priddy*, 295 U.S. 229, 55 S.Ct. 705, 79 L.Ed. 1408 (1935), for its support; however, *Priddy* also contained the statement that federal land banks, although federal instrumentalities, possess "many of the purposes and activities of private corporations." *Id.* at 237, 55 S.Ct. at 709. I conclude that the decisions in *Bismarck* and *Greene* were not made in the context of a due process challenge to a land bank's actions and are dated with respect to providing insight into the legal theory of "governmental action," and therefore are not precedential authority compelling a finding that this Court has subject matter jurisdiction in this case.

For the reasons stated above, this case will be dismissed for lack of subject matter jurisdiction. Plaintiffs have failed to carry their burden of clearly pleading and establishing such jurisdiction.

SO ORDERED.