**Troy O. BISHOP, Plaintiff-Appellant,**

v.

**FEDERAL INTERMEDIATE CREDIT BANK OF WICHITA; and B.L. Hauenstein, Defendants-Appellees.**

No. 88-1787.

United States Court of Appeals, Tenth Circuit.

July 17, 1990.

Submitted on the briefs: *

Ben A. Goff & Mary Ellen Lee of Ben A. Goff, P.C., Oklahoma City, Okl., for plaintiff-appellant.

D. Kent Meyers & Denise Cotter Villani of Crowe & Dunlevy, Oklahoma City, Okl., for defendants-appellees.

Before TACHA, BALDOCK, and BRORBY, Circuit Judges.

TACHA, Circuit Judge.

Plaintiff Troy Bishop commenced this action April 12, 1985, alleging that defendants Federal Intermediate Credit Bank of Wichita ("FICB") and its president, B.L. Hauenstein, had wrongfully discharged him from his position as president of the Chandler Production Credit Association ("Chandler") in violation of Oklahoma law and the first amendment of the United States Constitution. Bishop appeals from three district court orders: (1) an order, filed September 12, 1986, granting defendants partial summary judgment and dismissing plaintiff's state wrongful discharge claims as preempted by the Farm Credit Act; (2) an order, filed November 9, 1987, denying plaintiff's motion to reconsider the dismissal of the wrongful discharge claims; and (3) an order, filed April 13, 1988, granting defendants judgment on the pleadings on plaintiff's first amendment claims. We affirm in part and reverse in part.

## I.

In the September 12 order, the district court ruled that Bishop's wrongful discharge tort claim under Oklahoma law was preempted by the Farm Credit Act ("FCA"), 12 U.S.C. §§ 2001–2279aa. The district court ruled that Congress had intended to fully occupy the farm credit field, including the regulation of employer/employee relations in farm credit agencies.

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

■ We review the September 12 order granting defendants partial summary judgment *de novo,* viewing the record in the light most favorable to the party opposing the motion. *See Ewing v. Amoco Oil Co.,* 823 F.2d 1432, 1437 (10th Cir.1987). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ "[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Nevertheless, preemption may be found "when the federal legislation is 'sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation.'" *International Paper Co. v. Ouellette,* 479 U.S. 481, 491, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987) (quoting *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) and *Santa Fe,* 331 U.S. at 230, 67 S.Ct. at 1152). A state law is also invalid to the extent that it "actually conflicts with a … federal statute," *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978), or when the state law " 'stands as an obstacle to the accomplishment and execution of the full purposes of Congress,'" *Hillsborough County,* 471 U.S. at 713, 105 S.Ct. at 2375 (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). *See also Ouellette,* 479 U.S. at 492, 107 S.Ct. at 811. We turn to consider whether: (1) Congress has fully occupied the field; or (2) a state wrongful discharge action blocks execution of the congressional purpose.

### A.

■ We disagree with the district court's conclusion that Congress has preempted the entire field of farm credit, including employment relations. While Congress may well have preempted state interest laws and other state policies that would interfere in the financial operations of the farm credit system, *see, e.g., Federal Land Bank of St. Louis v. Wilson,* 719 F.2d 1367 (8th Cir.1983) (FCA preempts state usury laws), we do not find that Congress has clearly expressed an intent to preempt general state employment law. As the Supreme Court stated in *English v. General Electric Co.,* —— U.S. ——, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990), the "real issue" in determining whether a state wrongful discharge tort claim was preempted by Congress's occupation of the field of nuclear safety was whether the state law would "have some direct and substantial effect on the decisions made by those who build or operate nuclear facilities concerning radiological safety levels." *Id.* at 2278. While wrongful discharge suits would undoubtedly have some effect on decisions in the farm credit field, we conclude that they do not have the "direct and substantial effect" on decisions granting credit that would justify federal preemption of the state law wrongful discharge claims. Moreover, the Farm Credit Administration itself has ruled that state laws governing employment relations are to be respected. *See* Farm Credit Administration, Personnel Administration, 12 C.F.R. § 612.2000 (1989) ("[E]ach bank and association is subject to and required to comply with other Federal, state and local laws and regulations *related to the employment process.*") (emphasis added). We therefore hold that the district court erred in holding that Congress's passage of the FCA preempted the entire field of credit operations to the point of barring state employment law tort claims.

### B.

The determination that the Farm Credit Act does not so fully occupy the field as to preclude state employment law torts does not end our inquiry. The state tort action may still conflict with particular aspects of the Farm Credit Act. If this conflict rises to the level of an actual conflict with the federal statute, *see Ray,* 435 U.S. at 158, 98 S.Ct. at 994, or if the state law " 'stands as an obstacle to the accomplishment and exe-

cution of the full purposes of Congress,'" *Hillsborough County*, 471 U.S. at 713, 105 S.Ct. at 2375 (quoting *Hines*, 312 U.S. at 67, 61 S.Ct. at 404), the state law claim will be preempted.

FICB contends that recognizing a state wrongful discharge claim interferes with Congress's execution of the farm credit system because FICB is charged with supervising Chandler and needs the power to remove Chandler officers. FICB cites two statutory provisions and one Chandler by-law that it contends give FICB "unfettered" power to remove Chandler's officers. The first statute is FICB's statutory power to supervise the operations of Chandler. *See* 12 U.S.C. § 2093 ("Each production credit association shall be a body corporate and, subject to supervision by the Federal intermediate credit bank for the district. . . ."). The second statute is 12 U.S.C. section 2072, which FICB contends impliedly bestows the right to remove Chandler's chief executive officer. *See* 12 U.S.C. § 2072(15) (repealed) (FICB may "[a]pprove ... the appointment and compensation of the chief executive officer of [the production credit association]"). FICB also claims that Chandler's bylaws grant FICB an express right to remove officers. *See* Chandler Production Credit Ass'n By-laws, art. 430 ("The president, vice president, and the chief executive officer may be removed as officers at any time ... by the [Federal Intermediate Credit] Bank."). Bishop contends that the statutory provisions do not grant FICB the power to remove Chandler's officers and that the by-laws provision was illegally imposed on Chandler. We disagree.

The fair import of the statutory language found in sections 2072 and 2093 is that Chandler operates under the supervision of FICB. Moreover, we are convinced that section 2072(15)'s provisions permitting FICB to "[a]pprove ... the appointment" of Chandler's chief executive officer includes the implied power to remove as well. As the Eighth Circuit held in *Bailey v. Federal Intermediate Credit Bank*, 788 F.2d 498 (8th Cir.), *cert. denied*, 479 U.S. 915, 107 S.Ct. 317, 93 L.Ed.2d 290 (1986):

> To deny the existence of a removal power would give a [production credit association] the ability to emasculate an intermediate credit bank's supervisory powers by making the bank unable to force a [production credit association] to follow bank policies.

*Id.* at 503. Finally, we find that Congress's repeal of section 2072 and its reenactment in substantially the same form as section 2013, when coupled with new section 2274's express prohibition on removal of production credit association officers by FICB officers, *see* 12 U.S.C. § 2274 ("[A] bank officer or employee shall not remove any director or officer of any production credit association. . . ."), supports our interpretation that section 2072(15), as originally enacted, gave FICB the power to remove Bishop. We thus agree with FICB that it had the power to remove Bishop.

We disagree, however, with FICB's further contention that its power to remove was unfettered and necessarily overrides the state common law tort of wrongful discharge. The power to remove does not necessarily mean the power to remove for an illegal purpose. The Farm Credit Act is silent on the degree of freedom FICB has from state common law tort doctrines when removing production credit association officers. Because the Act is silent, we will defer to the Farm Credit Administration's determination that FICB is "subject to and required to comply with Federal, state and local laws and regulations related to employment relations," 12 C.F.R. § 612.2000. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984) (courts defer to agency's reasonable interpretation in face of statutory silence). The Eighth Circuit's decision in *Bailey* is not to the contrary; *Bailey* merely considered whether an intermediate credit bank had the *authority* to remove an officer of a production credit association, not whether the intermediate credit bank was immunized from state law wrongful discharge claims when it wrongfully exercised that power. *Bailey*, 788 F.2d at 499. We therefore hold that state law wrongful discharge claims resulting from FICB's re-

moval of production credit association officers is not preempted by the Farm Credit Act.[1]

## II.

Our holding that the Farm Credit Act does not preempt Bishop's state law wrongful discharge claim requires us to determine whether such a claim is proper under Oklahoma law.

■ We find that Bishop has stated a claim for wrongful discharge under the Oklahoma Supreme Court's decisions in *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla. 1989), and *Hinson v. Cameron*, 742 P.2d 549 (Okla.1987). In *Hinson*, the Oklahoma Supreme Court considered an at-will nurse's wrongful discharge complaint. While the court ultimately held that the nurse had not stated a valid claim, *Hinson*, 742 P.2d at 557, the court stated that:

> An at-will employee's discharge has been declared to be actionable on several *public policy* grounds. Claims recognized under this rubric are those by employees dismissed for (a) refusing to participate in an illegal activity; (b) performing an important public obligation; (c) exercising a legal right or interest; (d) exposing some wrongdoing by the employer; and (e) performing an act that public policy would encourage or, for refusing to do something that public policy would condemn, when the discharge is coupled with a showing of bad faith, malice or retaliation.

*Id.* at 552–53 (footnotes omitted). *Hinson*, however, left unanswered the question of whether Oklahoma would adopt the public policy exception to the employment at-will doctrine.

That question was answered in the affirmative by the Oklahoma Supreme Court in *Burk:*

> We thus follow the modern trend and adopt today the public policy exception to the at-will termination rule in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy articulated by constitutional, statutory or decisional law. We recognize this new cause of action in tort.

*Burk*, 770 P.2d at 28 (footnote omitted). The court ruled that:

> [T]he circumstances which present an actionable tort claim under Oklahoma law is where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy.

*Id.* at 29. The court observed that it would proceed cautiously in declaring public policy exceptions to the at-will doctrine in the absence of prior legislative or judicial expressions on the subject. *Id.*

We believe that the Oklahoma Supreme Court would recognize a public policy exception to the at-will doctrine if Bishop can in fact prove that he was terminated because of testimony given during a hearing conducted by Senator Boren and Representative Synar. Recognition of the exception supports our tradition of free, direct and truthful testimony at legislative hearings, a policy Oklahoma has implicitly recognized. *Cf.* Okl.Stat.Ann. title 12, § 411 (1988) ("No testimony given by a witness ... before any committee ... shall be used as evidence in any criminal proceeding against him in any court...."). Presum-

---

**1.** We note that FICB removal of production credit officers has now been expressly forbidden by Congress, perhaps partially as a result of this case. *See* 12 U.S.C. § 2274 ("bank officer or employee shall not remove any director or officer of any production credit association"). During the debates on amending the Farm Credit Act, Senator Boren observed:

> S. 1665 also includes a provision I offered which provides that no farm credit district board, bank board, or bank officer or employee would have the power to remove any director or officer of any production credit association or Federal land bank association.

The provision does not affect the authority granted to FCA in current law to remove such persons for cause.

> The need for this amendment arose several years ago when the district board, without cause, removed an entire board of a production credit association and the association's president because of their participation in a public hearing Congressman SYNAR and I held in eastern Oklahoma. This provision will ensure that districts will not be able to remove local officers or directors.

Cong.Rec. S 16836 (daily ed. Dec. 1, 1987) (remarks of Sen. Boren).

ably, Oklahoma would extend the same protections out of comity to hearings conducted under congressional authority. Accordingly, we hold that truthful testimony at congressional hearings is "an act consistent with a clear and compelling public policy" that justifies a public policy exception to the at-will employment doctrine. Moreover, even if the Oklahoma Supreme Court would not recognize Bishop's claim, we hold that Bishop is entitled to present his implied contract claim, *see Hinson*, 742 P.2d at 554–58. We therefore remand the wrongful discharge and breach of implied contract claim to the district court for further proceedings.

### III.

In its April 13, 1988 order, the district court ruled that Bishop had failed to assert a cognizable first amendment violation because defendants were not government actors for purposes of establishing constitutional deprivations. Where a party moves to dismiss pursuant to Fed.R.Civ.P. 12(c), we will review the judgment on the pleadings under the standard of review applicable to a Rule 12(b)(6) motion to dismiss. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir.1987). This court reviews a district court's Rule 12(b)(6) determination *de novo*. *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir.1986).

A cognizable constitutional deprivation requires that the deprivation be the result of government action. *See, e.g., Gilmore v. Salt Lake Community Action Prog.*, 710 F.2d 632, 635 and n. 9 (10th Cir.1983). Despite pervasive government regulation of the farm credit system and the designation of federal intermediate credit banks as "[f]ederally chartered instrumentalit[ies] of the United States," *see* 12 U.S.C. § 2071 (1989), a federal intermediate credit bank is not a government actor for purposes of establishing constitutional deprivations. *See, e.g., Redd v. Federal Land Bank*, 661 F.Supp. 861, 864 (E.D.Mo. 1987), *aff'd*, 851 F.2d 219 (8th Cir.1988); *LPR Land Holdings v. Federal Land Bank*, 651 F.Supp. 287, 289–92 (E.D.Mich. 1987); *cf. In re Hoag Ranches*, 846 F.2d 1225, 1226 (9th Cir.1988) (production credit association was not an agency of the federal government for purposes of extending appeal period under Fed.R.App.P. 4(a)(1)). *But see Schlake v. Beatrice Prod. Credit Ass'n*, 596 F.2d 278, 281 (8th Cir.1979). Accordingly, no cause of action will lie against FICB on Bishop's first amendment claims.

### IV.

We REVERSE the district court's determination that the Farm Credit Act preempts a state law wrongful discharge claim. We AFFIRM the district court's ruling that Bishop has failed to state a first amendment claim against FICB. We REMAND with directions to permit Bishop to attempt to establish his wrongful discharge/breach of implied contract claims pursuant to the Oklahoma Supreme Court's decisions in *Burk*, 770 P.2d 24 (Okla.1989), and *Hinson*, 742 P.2d 549 (Okla.1987).